

I HEREBY CERTIFY THIS TO BE
A TRUE COPY OF THE ORIGINAL

IN THE COURT OF COMMON PLEAS
UNION COUNTY, OHIO, OHIO

COURT OF COMMON
PLEAS
UNION COUNTY, OHIO

2019 MAY -3 PM 1:48

CLERK

| | |
|---|---|
| SHEENA HETZEL<br>407 Storms Avenue<br>Urbana, Ohio 43078 | CASE NO.  19 C V 0 0 8 1 |
| Plaintiff, | JUDGE: |
| v. | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| HONDA OF AMERICA MANUFACTURER,<br>INC.<br>24000 Honda Parkway<br>Marysville, Ohio 43040-8612 | **JURY DEMAND ENDORSED<br>HEREIN** |
| ADECCO USA, INC.<br>459 Coleman Xing<br>Marysville, Ohio 43040-7068 | |
|     Serve also:<br>    ADECCO USA, INC.<br>    CT Corporation System<br>    Statutory Agent<br>    4400 Easton Commons Way, Suite 125<br>    Columbus, Ohio 43219 | |
| GREGG SCHINDLER<br>24000 Honda Parkway<br>Marysville, Ohio 43040-8612 | |
| BOB PLIKARD<br>24000 Honda Parkway<br>Marysville, Ohio 43040-8612 | |
|     -and- | |
| MIKE SMITH<br>24000 Honda Parkway<br>Marysville, Ohio 43040-8612 | |
| Defendants. | |

RECEIVED
MAY 17 2019
LEGAL DEPARTMENT

Plaintiff, Sheena Hetzel ("Hetzel"), by and through undersigned counsel, as her Complaint

against the Defendants, states and avers the following:



## PARTIES & VENUE

1. Hetzel is a resident of Urbana, Champaign County, Ohio.

2. Honda of America Manufacturer, Inc. ("Honda"), is a domestic corporation with its principal place of business located in Marysville, Union County, Ohio.

3. Adecco USA, Inc. ("Adecco") is a foreign corporation, which conducts business in Ohio.

4. Honda and Adecco form a single employer for the purposes of Hetzel's claims herein, in that they share common offices, common management, common record keeping, common and shared equipment, bank account, centralized control of labor relations and personnel, and/or common ownership and financial control.

5. Therefore, Honda and Adecco are hereinafter referred to collectively as "Honda."

6. At all times herein, Honda was an "employer" within the meaning of R.C. § 4112.01 *et seq.*

7. Upon information and belief, Gregg Schindler ("Schindler") is a resident of Ohio.

8. Schindler is and, at all times hereinafter mentioned, was an individual, who was a Manager and/or a Supervisor at Honda.

9. At all times herein, Schindler acted directly or indirectly in the interests of Honda, in relation to Honda's employees.

10. At all times herein, Schindler was an "employer" within the meaning of R.C. § 4112.01 *et seq.*

11. Upon information and belief, Bob Plikard ("Plikard") is a resident of Ohio.

12. Plikard is and, at all times hereinafter mentioned, was an individual, who was a Manager and/or a Supervisor at Honda.

13. At all times herein, Plikard acted directly or indirectly in the interests of Honda, in relation to Honda's employees.

14. At all times herein, Plikard was an "employer" within the meaning of R.C. § 4112.01 *et seq.*

The Employee's Attorney.™



15. Upon information and belief, Mike Smith ("Smith") is a resident of Ohio.

16. Smith is and, at all times hereinafter mentioned, was an individual, who was a Manager and/or a Supervisor at Honda.

17. At all times herein, Smith acted directly or indirectly in the interests of Honda, in relation to Honda's employees.

18. At all times herein, Smith was an "employer" within the meaning of R.C. § 4112.01 *et seq.*

19. At all times herein, Hetzel was acting in the course and scope of her employment for Honda.

20. At all times herein, Schindler was acting in the course and scope of his employment for Honda.

21. At all times herein, Plikard was acting in the course and scope of his employment for Honda.

22. At all times herein, Smith was acting in the course and scope of his employment for Honda.

23. All of the material events alleged in this Complaint occurred in Union County.

24. Therefore, this Court has Personal Jurisdiction over Defendants pursuant to R.C. § 2307.382(A)(1).

25. Venue is proper pursuant to Civ. R. 3(C)(2).

26. In addition, this Court has General Jurisdiction over the Claims presented herein, including all subject matters of this Complaint.

## JURISDICTION

27. Within 300 days of the conduct alleged below, Hetzel filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2019-00527 against Honda, alleging discrimination on the bases of her sex and disability, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and, the Americans with Disabilities Act, as amended ("ADA").

28. On or about March 21, 2019, the EEOC issued and mailed a Notice of Right to Sue letter.



29. Hetzel received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1)—which is attached here as Plaintiff's Exhibit A.

30. Hetzel filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

31. Hetzel properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

32. Hetzel is a former employee of Honda.

33. At all relevant times herein, Schindler worked as a Coordinator at Honda.

34. At all relevant times herein, Plikard worked as a Line Coordinator at Honda.

35. At all relevant times herein, Smith worked as a Line Coordinator at Honda.

36. Honda was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar work weeks in the current or preceding calendar year.

37. Therefore, Honda is an "employer", as defined under 29 U.S.C. § 2611(4).

38. At all times relevant herein, Hetzel was employed by Honda for at least twelve (12) months and had at least one thousand two hundred fifty (1,250) hours of service with Honda.

39. Therefore, Hetzel was an "eligible employee" under the Family Medical Leave Act ("FMLA"), as defined under 29 U.S.C. § 2611(2)(A).

40. On or about April 22, 2016, Honda hired Hetzel as a Temporary Inspector.

41. Accordingly, Hetzel is a temporary employee ("Temp").

42. Hetzel has a hearing impairment ("Hearing Impairment").

43. Specifically, Hetzel has moderate loss of hearing in her left ear and moderate loss of hearing in her right ear.



44. An employee is considered "disabled" if he or she suffers from an impairment, which significantly hinders a major life activity.

45. "Hearing" is a major life activity.

46. Therefore, Hetzel is disabled ("Hetzel's Disability.)

47. As a result of Hetzel's Disability, Hetzel is also a member of a Protected Class.

48. In or about April 2017, Hetzel interviewed ("First Interview") for a full-time position ("Full-Time") at Honda.

49. Hetzel informed Honda of her Hearing Impairment during her First Interview.

50. Thus, in or about April 2017, Hetzel informed Honda that she was disabled.

51. Therefore, in or about April 2017, Honda either knew and/or reasonably should have known about Hetzel's Disability.

52. Following Hetzel's First Interview, Honda decided not to hire Hetzel as a Full-Time employee.

53. Therefore, following Hetzel's First Interview, Honda continued to classify Hetzel as a Temp.

54. In or about July 2017, Honda interviewed Hetzel for a second time for a Full-Time position ("Second Interview").

55. During Hetzel's Second Interview, Honda required Hetzel to take a hearing test ("Hearing Test").

56. Following Hetzel's Second Interview, Honda informed Hetzel that she failed her Hearing Test.

57. Accordingly, after Hetzel's Second Interview, Honda refused to offer Hetzel Full-Time employment, once again, because she failed Honda's Hearing Test.

58. Therefore, following Hetzel's Second Interview, Honda continued to classify Hetzel as a Temp.

59. Hetzel normally wears hearing aids ("Hearing Aids").



60. Hetzel can hear well when she wears her Hearing Aids.

61. "Perfect hearing" was not a bona fide qualification for either of the Full-Time positions that Hetzel applied for during her First and/or Second Interview at Honda.

62. However, Honda based its decision on not hiring Hetzel, in part, because of her Hearing Impairment.

63. Therefore, Honda based its decision on not hiring Hetzel, in part, on the basis of Hetzel's Disability.

64. Hetzel was a Temp for over two years at Honda.

65. Upon information and belief, Hetzel was employed as a Temp at Honda for an unusually long period of time.

66. Upon information and belief, Hetzel was employed as a Temp at Honda for much longer than her similarly-situated coworkers were, who were outside of her Protected Class.

67. Upon information and belief, Honda did not employ people outside of Hetzel's Protected Class as Temps for over two years.

68. Upon information and belief, Honda offered Full-Time positions to employees, who were outside of Hetzel's Protected Class.

69. Upon information and belief, Honda offered Full-Time positions to employees, who had objectively less and/or comparable work experience, over Hetzel.

70. In or about the spring of 2016, Hetzel's Supervisor, Schindler, asked Hetzel for her phone number.

71. In or about the spring of 2016, Hetzel gave Schindler her phone number.

72. In or about December 2016, Hetzel applied for a Full-Time position.



73. In or about December 2016, Hetzel asked Schindler to recommend her for a Full-Time position.

74. In response, Schindler said he would recommend Hetzel for a Full-Time position if she sent him naked pictures ("First Request for Naked Pictures").

75. Hetzel rejected Schindler's First Request for Naked Pictures ("Hetzel's Rejection").

76. After Hetzel's Rejection, in or about January 2017, Honda suddenly transferred Hetzel from her Temp position in Inspections to another Temp position in Sealing.

77. Hetzel preferred her Temp position in Inspections, as opposed to her new Temp position in Sealing.

78. Defendants transferred Hetzel to a Temp position in Sealing because she rejected Schindler's First Request for Naked Pictures.

79. In or about February 2017, Schindler informed Hetzel that she had to work in a Temp position in Sealing because she did not send him Naked Pictures.

80. In or about February 2017, Schindler informed Hetzel that another coworker, Rhoni, became a Full-Time Honda employee after she sent Schindler Naked Pictures.

81. In or about February 2017, Schindler started frequently sending sexually explicit text messages ("Explicit Messages") to Hetzel.

82. In or about February 2017, Hetzel's boyfriend broke up with her because Schindler was sending so many Explicit Messages to Hetzel.

83. In or about February 2017, Schindler threatened that Hetzel would lose her job if she did not send Naked Pictures to him ("First Job Threat").

84. In connection with the First Job Threat, Schindler told Hetzel that she would be transferred back to her Temp position in Inspections if she sent him Naked Pictures first.



85. In or about March 2017, Hetzel reluctantly started sending Naked Pictures to Schindler.

86. After about a week of Hetzel sending Naked Pictures to Schindler, Defendants transferred Hetzel to a Temp position back in Inspections.

87. In or about April 2017, Schindler told Hetzel that he wanted her to send him explicit videos ("Naked Videos"), in addition to the Naked Pictures.

88. In or about April 2017, Hetzel told Schindler that her phone did not have the capability to send Naked Videos.

89. Thus, in or about April 2017, Schindler started scheduling Hetzel for several hours of overtime.

90. Upon information and belief, it is uncommon for Honda to schedule Temps for several hours of overtime ("Uncommon Overtime Hours").

91. According to Schindler, he scheduled Hetzel for Uncommon Overtime Hours so that she would be able to afford a new phone with the capability to send Explicit Videos to him.

92. Between April 2017 and July 2017, Schindler continued to frequently request Naked Photos from Hetzel.

93. In or about July 2017, Honda interviewed Hetzel ("Third Interview) for a Full-Time position for the third time.

94. According to Schindler, Honda scheduled Hetzel's Third Interview because she finally started sending Schindler the Naked Photos he demanded.

95. By January 2018, Schindler continued to pressure Hetzel to purchase a phone with the capability to send Naked Videos.

96. Thus, Hetzel purchased a phone with the capability to send Naked Videos.

97. In or about January 2018, Schindler began pressuring Hetzel to send Naked Videos to him, in addition to the Naked Photos.

The Employee's Attorney.™



98. On or about June 28, 2018, Hetzel made a Complaint to Honda about the Sexual Harassment she was facing ("First Complaint of Harassment") from Schindler.

99. After Hetzel's First Complaint of Harassment, Honda terminated Schindler's employment.

100. Upon information and belief, Honda subsequently rehired Schindler.

101. After Hetzel made her First Complaint of Harassment, Hetzel's colleagues started retaliating against Hetzel.

102. After Hetzel's First Complaint of Harassment, Hetzel repeatedly heard multiple colleagues openly talking about her and Schindler.

103. After Hetzel's First Complaint of Harassment, Defendants started micromanaging Hetzel's work.

104. After Hetzel's First Complaint of Harassment, Defendants started eavesdropping on Hetzel's conversations at work.

105. After Hetzel's First Complaint of Harassment, Defendants started to build a pretext for terminating Hetzel's employment.

106. Because of the stress associated with Schindler's Sexual Harassment, Hetzel was admitted to the emergency room on four separate occasions for treatment of her mental health conditions.

107. In or about July 2018, Hetzel's doctor diagnosed her with anxiety.

108. In or about July 2018, Hetzel notified Honda about her anxiety.

109. On or about August 1, 2018, Hetzel's doctor recommended that she take leave from work under FMLA.

110. From on or about August 1, 2018, until on or about August 13, 2018, Hetzel took leave from Honda under FMLA.



111.    On or about August 15, 2018, Hetzel was directed to work on a machine (the "Machine");

however, Honda did not provide her with receiving training or protective gloves ("Gloves").

112.    Upon information and belief, Honda provided Hetzel's coworkers, who were outside of

Hetzel's Protected Class, with Gloves.

113.    Upon information and belief, Honda provided Hetzel's coworkers, who did not make

Complaints about Sexual Harassment, with Gloves.

114.    Upon information and belief, Honda provided Hetzel's coworkers, who did not exercise

their FMLA rights, with Gloves.

115.    On or about August 15, 2018, the Machine cut Hetzel's hand (the "Cut").

116.    On or about August 15, 2018, Hetzel went to Honda's on-site medical facility to receive

bandages for the Cut.

117.    On or about August 15, 2018, after Hetzel returned from the medical facility to her work

station, Plikard, Line Coordinator for Honda, confronted Hetzel about the sincerity of the Cut.

118.    Upon information and belief, Defendants did not confront Hetzel's similarly-situated

coworkers about work-related injuries.

119.    On or about August 15, 2018, Hetzel requested permission from Plikard to speak with her

Coordinator, Smith, because the pain from the Cut was getting worse.

120.    On or about August 15, 2018, Plikard shouted at Hetzel for requesting to speak to Smith.

121.    On or about August 15, 2018, Plikard ultimately agreed to allow Hetzel to speak to Smith.

122.    On or about August 15, 2018, Hetzel asked Smith for permission to go back to the medical

facility, or to go home, because the Cut on her hand was so painful.

123.    On or about August 15, 2018, Smith refused to allow Hetzel to go home and/or return to

the medical facility.

The Employee's Attorney.™



124. On or about August 15, 2018, Smith shouted at Hetzel for approximately 45 minutes.

125. On or about August 15, 2018, Smith said to Hetzel, among other things, "You ain't nothing but a liar, stupid bitch."

126. After Smith's 45-minute tirade, Hetzel was forced to return to work.

127. Upon information and belief, Hetzel's similarly-situated coworkers were not discouraged from seeking medical treatment for work-related injuries.

128. On or about August 15, 2018, Hetzel scheduled an appointment at Memorial Hospital Occupational Health ("Memorial") in order to file a Worker's Compensation claim for the Cut.

129. On or about August 20, 2018, Memorial informed Hetzel that Honda told Memorial that Honda did not want Hetzel to go to Memorial.

130. Honda refused to cooperate or communicate with Memorial for Hetzel's treatment.

131. After Smith shouted at Hetzel on or about August 15, 2018, Hetzel was fearful to return to work.

132. After Smith shouted at Hetzel on or about August 15, 2018, Hetzel visited her doctor, who diagnosed her with post-traumatic stress disorder ("PTSD"), in addition in her anxiety.

133. According to Hetzel's doctor, Hetzel's PTSD and anxiety were triggered by her experiences working at Honda.

134. On or about August 31, 2018, Hetzel applied for short-term disability ("STD") due to her PTSD and anxiety.

135. Defendants approved Hetzel's STD through November 15, 2018.

136. Hetzel never returned to work at Honda after her short-term disability.

137. On or about January 7, 2019, Hetzel began working for a new employer.



138. On or about January 11, 2019, Honda contacted Hetzel's new employer to inform them that Hetzel was still on the Honda payroll ("Retaliatory Employer Contact").

139. Because of the Retaliatory Employer Contact, Hetzel's new employer reduced her hours to 24-hours per week.

140. Subsequently, on or about January 18, 2019, Honda terminated Hetzel's employment.

141. Therefore, Defendants discriminated against Hetzel on the basis of her disability.

142. Defendants discriminated against Hetzel on the basis of her gender.

143. Defendants retaliated against Hetzel for making her First Complaint of Harassment.

144. Defendants retaliated against Hetzel for asking for an accommodation for her disability.

145. Defendants retaliated against Hetzel for exercising her FMLA rights.

146. Defendants retaliated against Hetzel by contacting Hetzel's new employer.

147. As a direct and proximate result of Defendants' conduct, Hetzel has and will continue to suffer damages.

## COUNT I: QUID PRO QUO SEXUAL HARASSMENT UNDER R.C. § 4112.02

148. Hetzel restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

149. As a woman, Hetzel is a member of a protected class under R.C. § 4112.02.

150. During Hetzel's employment, Hetzel was subjected to unwelcome sexual harassment in the form of sexual advances and requests for sexual favors from her Supervisor, Schindler.

151. The harassment against Hetzel was based on her gender.

152. Hetzel's submission to the unwelcome sexual advances from Schindler was an express or implied condition for receiving job benefits and/or continued employment at Honda.

153. At first, Hetzel rejected Schindler's acts of sexual harassment.



154. After Hetzel's Rejection, Schindler started retaliating against her by issuing Hetzel adverse employment actions.

155. After Schindler started retaliating against Hetzel, she reluctantly granted his later requests for sexual favors.

156. Schindler rewarded Hetzel for granting his requests for sexual favors.

157. Schindler persistently requested sexual favors for more than a year after Hetzel reluctantly sent him the Naked Photographs he initially requested.

158. Schindler expressly told Hetzel repeatedly that he would punish Hetzel at work unless she continued to comply with his requests for Naked Photographs.

159. Defendants knew or should have known about Schindler's sexual advances towards Hetzel.

160. Defendants failed to remedy Schindler's misconduct and/or stop Schindler from committing continued acts of sexual harassment against Hetzel.

161. As a direct and proximate result of Defendants' conduct, Hetzel has suffered and will continue to suffer damages.

### COUNT II: QUID PRO QUO SEXUAL HARASSMENT UNDER 42 U.S.C. § 2000e *et seq.*

162. Hetzel restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

163. As a woman, Hetzel is a member of a protected class under 42 U.S.C. § 2000e *et seq.*

164. During Hetzel's employment, Hetzel was subjected to unwelcome sexual harassment in the form of sexual advances and requests for sexual favors from her Supervisor, Schindler.

165. The harassment against Hetzel was based on her gender.

166. Hetzel's submission to the unwelcome sexual advances from Schindler was an express or implied condition for receiving job benefits and/or continued employment at Honda.



167. At first, Hetzel rejected Schindler's acts of sexual harassment.

168. After Hetzel's Rejection, Schindler started retaliating against her by issuing Hetzel adverse employment actions.

169. After Schindler started retaliating against Hetzel, she reluctantly granted his later requests for sexual favors.

170. Schindler rewarded Hetzel for granting his requests for sexual favors.

171. Schindler persistently requested sexual favors for more than a year after Hetzel reluctantly sent him the Naked Photographs he initially requested.

172. Schindler expressly told Hetzel repeatedly that he would punish Hetzel at work unless she continued to comply with his requests for Naked Photographs.

173. Defendants knew or should have known about Schindler's sexual advances towards Hetzel.

174. Defendants failed to remedy Schindler's misconduct and/or stop Schindler from committing continued acts of sexual harassment against Hetzel.

175. As a direct and proximate result of Defendants' conduct, Hetzel has suffered and will continue to suffer damages.

## COUNT III: RETALIATORY DISCRIMINATION IN VIOLATION OF R.C. § 4112.02

176. Hetzel restates each and every prior paragraph of this complaint, as if it were fully restated herein.

177. As a result of Defendants' discriminatory conduct described above, Hetzel made her First Complaint of Harassment to Defendants.

178. Subsequent to Hetzel's First Complaint of Harassment, Defendants started to monitor and/or micromanage Hetzel's work more than Hetzel's coworkers' assignments, who did not make akin Complaints of harassment.



179. Subsequent to Hetzel's First Complaint of Harassment, management and coworkers openly gossiped about Hetzel when they thought she could not hear them.

180. Defendants' actions were retaliatory in nature based on Hetzel's opposition to the unlawful discriminatory conduct.

181. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…".

182. As a direct and proximate result of Defendant's retaliatory discrimination against and unlawful termination of Hetzel, she suffered and will continue to suffer damages.

## COUNT IV: RETALIATORY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq.*

183. Hetzel restates each and every prior paragraph of this complaint, as if it were fully restated herein.

184. As a result of Defendants' discriminatory conduct described above, Hetzel made her First Complaint of Harassment to Defendants.

185. Subsequent to Hetzel's First Complaint of Harassment, Defendants started to monitor and/or micromanage Hetzel's work more than Hetzel's coworkers' assignments, who did not make akin Complaints of harassment.

186. Subsequent to Hetzel's First Complaint of Harassment, management and coworkers openly gossiped about Hetzel when they thought she could not hear them.

187. Defendants' actions were retaliatory in nature based on Hetzel's opposition to the unlawful discriminatory conduct.

The Employee's Attorney.™



188.   Pursuant to 42 U.S.C. § 2000e-3, it is an unlawful discriminatory practice to "discriminate against any individual…because he has opposed any practice made an unlawful employment practice by this subchapter."

189.   As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Hetzel, she suffered and will continue to suffer damages.

## COUNT V: WORKER'S COMPENSATION RETALIATION

190.   Hetzel restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

191.   On or about August 15, 2018, Hetzel injured herself at work.

192.   On or about August 15, 2018, Defendants discouraged Hetzel from filing a Worker's Compensation claim.

193.   On or about August 15, 2018, Plikard discouraged Hetzel from receiving treatment for the Cut.

194.   On or about August 15, 2018, Smith accused Hetzel of lying about her workplace injury.

195.   On or about August 20, 2018, Defendants contacted Memorial in order to discourage Hetzel's doctor from assisting Hetzel in filing a Worker's Compensation claim.

196.   After Defendants retaliated against Hetzel for reporting a workplace injury, Hetzel felt uncomfortable returning to work.

197.   After Defendants retaliated against Hetzel for reporting a workplace injury, Hetzel took STD leave due to her PTSD and anxiety.

198.   On or about January 18, 2019, Honda terminated Hetzel.

199.   Honda terminated Hetzel in retaliation for Hetzel filing a claim for Worker's Compensation benefits.



200. Hetzel was discharged without just cause for filing a claim for Worker's Compensation benefits, Hetzel is therefore entitled to recover damages from Honda for its wrongful discharge of her in retaliation for filing a claim for Worker's Compensation benefits under R.C. § 4123.90.

201. As a direct and proximate result of Defendants' conduct, Hetzel has suffered and will continue to suffer damages.

## COUNT VI: DISABILITY DISCRIMINATION UNDER R.C. § 4112.01 *et seq.*

202. Hetzel restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

203. At all relevant times, Hetzel was able to perform her job duties.

204. Hetzel's Hearing Impairment significantly limits one or more of her major life activities.

205. In the alternative, Defendants perceived Hetzel's Hearing Impairment to be a disability.

206. Defendants treated Hetzel differently than other similarly-situated employees, who were outside of her Protected Class, on the basis of Hetzel's Disability.

207. Defendants treated Hetzel differently than other similarly-situated employees based on her perceived disabling condition.

208. Hetzel's colleagues openly gossiped about Hetzel's claims of sexual harassment because they believed that her disability made her unable to hear the gossip.

209. In or about April 2017, Honda refused to hire Hetzel as a Full-Time employee because of her disability.

210. In or about April 2017, Honda refused to hire Hetzel as a Full-Time employee because of her perceived disability.



211. In or about July 2017, Honda refused to hire Hetzel as a Full-Time employee because of her disability.

212. Therefore, Defendants unlawfully discriminated against Hetzel on the basis of her disability.

213. As a direct and proximate result of Defendants' conduct, Hetzel has suffered and will continue to suffer damages.

### COUNT VII: DISABILITY DISCRIMINATION UNDER 42 U.S.C. § 12101 *et seq.*

214. Hetzel restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

215. At all relevant times, Hetzel was able to perform her job duties.

216. Hetzel's Hearing Impairment significantly limits one or more of her major life activities.

217. In the alternative, Defendants perceived Hetzel's Hearing Impairment to be a disability.

218. Defendants treated Hetzel differently than other similarly-situated employees, who were outside of her Protected Class, on the basis of Hetzel's Disability.

219. Defendants treated Hetzel differently than other similarly-situated employees based on her perceived disabling condition.

220. Hetzel's colleagues openly gossiped about Hetzel's claims of sexual harassment because they believed that her disability made her unable to hear the gossip.

221. In or about April 2017, Honda refused to hire Hetzel as a Full-Time employee because of her disability.

222. In or about April 2017, Honda refused to hire Hetzel as a Full-Time employee because of her perceived disability.



223. In or about July 2017, Honda refused to hire Hetzel as a Full-Time employee because of her disability.

224. Therefore, Defendants unlawfully discriminated against Hetzel on the basis of her disability.

225. As a direct and proximate result of Defendants' conduct, Hetzel has suffered and will continue to suffer damages.

<u>**COUNT VIII: RETALIATION IN VIOLATION OF THE FMLA**</u>

226. Hetzel restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

227. During her employment, Hetzel utilized FMLA leave.

228. After Hetzel utilized her qualified FMLA leave, Defendants started retaliating against Hetzel.

229. When Hetzel returned from her FMLA leave on or about August 15, 2018, Defendants required her to work on the Machine, without proper training or safety equipment.

230. When Hetzel returned from FMLA leave on or about August 15, 2018, Smith reprimanded her for approximately 45 minutes.

231. Defendants retaliated against Hetzel because she took FMLA leave.

232. Defendants willfully retaliated against Hetzel in violation of 29 U.S.C. § 2615(a).

233. As a direct and proximate result of Defendants' wrongful conduct, Hetzel is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.



## COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

234.    Hetzel restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

235.    Defendants intended to cause Hetzel emotional distress or knew that their acts or omissions would result in serious emotional distress to Hetzel.

236.    Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

237.    As a direct and proximate result of Defendants' acts and omissions as set forth above, Hetzel has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

238.    As a direct and proximate result of Defendants' conduct and the resulting emotional distress, Hetzel has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Sheena Hetzel respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Defendants to retroactively restore Plaintiff to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Hetzel for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

The Employee's Attorney.™



(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Hetzel's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Matthew Bruce CAH (0096865)

Matthew G. Bruce (0083769)
Lorenzo Washington (0096611)
Paul Filippelli (0097085)
THE SPITZ LAW FIRM, LLC
8354 Princeton Glendale Road, Suite 203
West Chester, Ohio 45069
Phone: (216) 291-4744 ext. 173
Fax:    (216) 291-5744
Email: matthew.bruce@spitzlawfirm.com
Email: lorenzo.washington@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com

*Attorneys for Plaintiff Sheena Hetzel*

## JURY DEMAND

Plaintiff Sheena Hetzel demands a trial by jury by the maximum number of jurors permitted.

Matthew Bruce CAH (0096865)

Matthew G. Bruce (0083769)
Lorenzo Washington (0096611)
Paul Filippelli (0097085)

The Employee's Attorney.™



EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Sheena Hetzel
407 Storms Ave.
Urbana, OH 43078

From: Cincinnati Area Office
John W. Peck Fed. Bldg
550 Main St Room 10-019
Cincinnati, OH 45202

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 473-2019-00527 | Cheryl Klink, Investigator Support Asst | (513) 684-2844 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Melanie L. Breen / MS*                    MAR 2 1 2019

Enclosures(s)

Melanie L. Breen,
Area Office Director

(Date Mailed)

cc:
Julie Austin
Paralegal
HONDA OF AMERICA MFG., INC
24025 Honda Parkway
Marysville, OH 43040

Lorenzo Washington, Esq.
SPITZ LAW FIRM
The WaterTower Plaza
25200 Chagrin Blvd Suite 200
Beachwood, OH 44122

PLAINTIFF'S
Exhibit 1

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of **major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➤ **Only one** major life activity need be substantially limited.
➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

"Regarded as" coverage:

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

From:Champaign County Library     937 653 5678     02/25/2019 18:33     #116 P.001/002

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 473-2019-00527 |
| | | and EEOC |

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Sheena Hetzel | (937) 508-5069 | 6/20/81 |

| Street Address | City, State and ZIP Code |
|---|---|
| 407 Storms Avenue, Urbana, Ohio 43078 | |

**RECEIVED**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

**FEB 1 2 2019**

**US EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Honda of America Manufacturer, Inc. | 20+ | (937) 642-5000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 24000 Honda Parkway, Marysville, Ohio 43040-9251 | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☒ OTHER (Specify) Sexual Harassment; FMLA Retaliation; Worker's Compensation Retaliation

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: Apr 22, 2016   Latest: Jan 18, 2019

☐ CONTINUING ACTION

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet(s)):

I was wrongfully discriminated against, terminated, and retaliated against on the basis of my gender; disability; exercising my rights under the Family and Medical Leave Act ("FMLA"); and exercising my rights under Worker's Compensation.

Please see attached Notice of Claims, which outlines precisely how my former employers, . . . Honda of America, Mfg., ("Honda") discriminated against me on the basis of my gender because of the circumstances surrounding my sexual harassment complaint against a coworker. Moreover, , I Honda retaliated against me by terminating me shortly after I made my complaint for sexual harassment too. In addition, the attached Notice of Claims outlines precisely how I was discriminated against on the basis of my disability.

Furthermore, the attached Notice of Claims outlines precisely how I was discriminated against for exercising my rights under FMLA and Worker's Compensation. Moreover, , Honda retaliated against me by terminating me shortly after I started exercising my rights under FMLA and Worker's Compensation as well.

Accordingly, as a result of the events outlined in the attached Notice of Claims, I was wrongfully discriminated against, terminated, and retaliated against because of my gender and disability in violation of Title VII of the Civil Rights Act of 1967, as amended; and, Title I of the Americans with Disabilities Act of 1990, amended, ("ADA"), 42 U.S.C. 126 § 12101 et seq. Similarly, I Honda retaliated against me by terminating me shortly after I made a complaint against my coworker for sexually harassing me; and, shortly after I started exercising my rights under FMLA and Worker's Compensation too.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 2/25/19   [signature] Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) /25/19   Candy L. Offenbecher Notary Public, State of Ohio My Commission Expires 05-28-2023 |

From:Champaign County Library        937 653 5670        02/25/2019 16:33    #116 P.002/002

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ☐ FEPA ☐ EEOC | |
| | | and EEOC |

*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 2/25/19

Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 2-25-19

Candy L. Offenbecher
Notary Public, State of Ohio
My Commission Expires 05-28-2023

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:   Sheena Hetzel
      407 Storms Ave.
      Urbana, OH 43078

From:   Cincinnati Area Office
        John W. Peck Fed. Bldg
        550 Main St  Room 10-019
        Cincinnati, OH 45202

☐    On behalf of person(s) aggrieved whose identity is
     CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 473-2019-00526 | Cheryl Klink, **Investigator Support Asst** | (513) 684-2844 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Melanie L. Breen /MS*

MAR 2 1 2019

Enclosures(s)

**Melanie L. Breen,
Area Office Director**

(Date Mailed)

cc:   Kimberly Raffield
      Paralegal
      ADECCO GROUP NORTH AMERICA
      10151 Deerpark Blvd, Bldg 200, Suite 400
      Jacksonville, FL 32256

      Lorenzo Washington, Esq.
      SPITZ LAW FIRM
      The WaterTower Plaza
      25200 Chagrin Blvd Suite 200
      Beachwood, OH 44122

Enclosure with EEOC
Form 161 (11/16)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

"Regarded as" coverage:
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

From:Champaign County Library        937 653 5670        02/25/2019 16:33    #116 P.001/002

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 473-2019-00526 |

and EEOC

_State or local Agency, if any_

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Sheena Hetzel | (937) 508-5069 | 6/20/81 |

| Street Address | City, State and ZIP Code |
|---|---|
| 407 Storms Avenue, Urbana, Ohio 43078 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

**RECEIVED**

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Adecco USA, Inc. | 20+ | (631) 844-7800 |

| Street Address | City, State and ZIP Code |
|---|---|
| 175 Broad Hollow Road, Melville, New York 11747 | FEB 1 2 2 9 |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | US EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | |

| Street Address | City, State and ZIP Code |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|---|---|---|
| ☒ RETALIATION | ☐ AGE | ☒ DISABILITY | ☐ GENETIC INFORMATION | | Earliest: Apr 22, 2016  Latest: Jan 18, 2019 |
| ☒ OTHER (Specify) Sexual Harassment; FMLA Retaliation; Worker's Compensation Retaliation | | | | | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was wrongfully discriminated against, terminated, and retaliated against on the basis of my gender; disability; exercising my rights under the Family and Medical Leave Act ("FMLA"); and exercising my rights under Worker's Compensation.

Please see attached Notice of Claims, which outlines precisely how my former employers, Adecco USA, Inc., ("Adecco"; _____") discriminated against me on the basis of my gender because of the circumstances surrounding my sexual harassment complaint against a coworker. Moreover, Adecco _____ retaliated against me by terminating me shortly after I made my complaint for sexual harassment too. In addition, the attached Notice of Claims outlines precisely how I was discriminated against on the basis of my disability.

Furthermore, the attached Notice of Claims outlines precisely how I was discriminated against for exercising my rights under FMLA and Worker's Compensation. Moreover, Adecco _____ retaliated against me by terminating me shortly after I started exercising my rights under FMLA and Worker's Compensation as well.

Accordingly, as a result of the events outlined in the attached Notice of Claims, I was wrongfully discriminated against, terminated, and retaliated against because of my gender and disability in violation of Title VII of the Civil Rights Act of 1967, as amended; and, Title I of the Americans with Disabilities Act of 1990, amended, ("ADA"), 42 U.S.C. 126 § 12101 et seq. Similarly, Adecco _____ retaliated against me by terminating me shortly after I made a complaint against my coworker for sexually harassing me; and, shortly after I started exercising my rights under FMLA and Worker's Compensation too.

**RECEIVED**

FEB 1 2 2019

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| [signature] 2/25/19 | SIGNATURE OF COMPLAINANT [signature] |
| Date / Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 2/25/19 Candy L. Offenbacher, Notary Public, State of Ohio My Commission Expires 05-28-2023 |

From:Champaign County Library        937 653 5670        02/25/2019 16:33        #116 P.002/002

EEOC Form 5 (11/09)

| | CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| | This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☐ EEOC | |

and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the above is true and correct.

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)    2-2-5-19

Candy L. Offenbecher
Notary Public, State of Ohio
My Commission Expires 05-28-202

Date ___8/25/19___        Charging Party Signature

 CT Corporation

**Service of Process Transmittal**
05/17/2019
CT Log Number 535501126

TO:     Jeffrey Watson
        Adecco Group NA
        10151 Deerwood Park Boulevard, Building 200, Suite 400
        Jacksonville, FL 32256

RE:     **Process Served in Ohio**

FOR:    Adecco USA, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | SHEENA HETZEL, Pltf. vs. HONDA OF AMERICA MANUFACTURER, INC., et al., Dfts. // To: Adecco USA, Inc |
| **DOCUMENT(S) SERVED:** | * |
| **COURT/AGENCY:** | *  *  ** <br> Case # 19CV0081 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - * |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Columbus, OH |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 05/17/2019 postmarked on 05/15/2019 |
| **JURISDICTION SERVED :** | Ohio |
| **APPEARANCE OR ANSWER DUE:** | Within 28 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | * <br> * <br> * <br> * <br> * <br> * <br> *, ** |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/17/2019, Expected Purge Date: 05/22/2019 <br><br> Image SOP <br><br> Email Notification,  Jessenia Lopez  Jessenia.lopez@adeccona.com <br><br> Email Notification,  Kimberly Raffield  Kimberly.raffield@adeccona.com <br><br> Email Notification,  Jeffrey Watson  Jeffrey.Watson@adeccona.com <br><br> Email Notification,  Lacey Estel  Lacey.N.Estel@adeccogroup.com |
| **SIGNED:** <br> **ADDRESS:** | C T Corporation System <br> 4400 Easton Commons Way <br> Suite 125 <br> Columbus, OH 43219 |

Page 1 of  2 / SS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.